574 A.2d 110

Bob STRICKLAND, t/a Bob Strickland's Auto
Service, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
TRANSPORTATION, Appellee.

Bob STRICKLAND, t/a Bob Strickland's Auto
Service, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
TRANSPORTATION, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 2, 1990.

Decided April 4, 1990.

Reconsideration Denied June 6, 1990.

Stephen J. Mascherino, for appellant.

Donald H. Poorman, Asst. Counsel, with him, Lawrence R. Wieder, Asst. Counsel, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, for appellee.

Before CRAIG and COLINS, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Bob Strickland, t/a Bob Strickland's Auto Service (Strickland) appeals from two orders[1] of the Court of Common Pleas of Chester County which sustained the actions of the Department of Transportation, Bureau of Motor Vehicles (DOT) suspending two Certificates of Appointment, (1) as an official inspection station and (2) as an official emission inspection station. We vacate and remand.

As a result of a September 22, 1986 departmental hearing, Strickland was notified that his Certificate of Appointment as an official inspection station was suspended for a period of one year[2] pursuant to Section 4724 of the Vehicle Code (Act).[3] Likewise, Strickland's Certificate of Appointment as an official emission inspection station was suspended at the same hearing, again pursuant to Section 4724 of the Act. Furthermore, two employees of Strickland's, namely, Gene W. Yenser, Jr. (Yenser) and James W. Chambers (Chambers) lost their certifications as official inspection mechanics and official emission inspection mechanics at the same hearing, under Section 4726 of the Act, 75 Pa. C.S. § 4726. The basis for these suspensions involved the issuance of altered inserts for Certificates of Inspection and improper record keeping. On December 15, 1988, a hearing de novo was held as to the Yenser and Chambers appeals in the Court of Common Pleas of Chester County. Neither Yenser nor Chambers appeared. On February 9, 1989, a hearing de novo was held in the same court as to Strickland's appeal. On December 15, 1988, the trial court handed down orders with respect to both Chambers and Yenser denying their appeal and reinstating the suspensions.[4] On

1. These appeals were consolidated for disposition by this Court.

2. 67 Pa.Code § 175.51 and § 177.61 list the types and the corresponding lengths of suspension for each violation.

3. 75 Pa.C.S. § 4724, which states, in its pertinent part:
(a) General rule.—The department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department.

4. Neither Chambers nor Yenser are parties to this appeal.

April 26, 1989, the trial court sustained the Department's suspension of Strickland's certificates, both as an official inspection station and as an official emission inspection station. This appeal followed.[5]

Through testimony, it was established that Trooper Timothy D. Markley, an inspection station supervisor for the Pennsylvania State Police, received altered safety and emission stickers which had been removed from a vehicle stopped by another officer. Both stickers contained inserts designating the month of inspection, on which a line had been drawn diagonally across with magic marker to make the insert appear to be the correct insert for a vehicle in an emissions inspection area of the state. Markley determined that these stickers were issued by Strickland's Inspection Station. After investigation, Markley found that the vehicle to which the stickers in question were issued was registered in an emission inspection area and required an emissions area insert. Markley also ascertained that James Chambers' signature appeared on the back of the safety inspection sticker, while Gene Yenser's signature was written on the station's official log book for that inspection. Chambers had performed the inspection and Yenser had signed the log book. Chambers and Yenser also agreed that they had run out of proper inserts for use in emission inspection areas, and had tried to make non-emission inserts look like emission inserts by drawing a line across them with a magic marker.

Strickland testified that he was away from the station on the day his employees ran out of inserts and was informed of this fact by telephone. He claims he directed his employees to borrow inserts from the station across the street. On his return the next day, Strickland was informed that the other station did not have the proper inserts and at that

5. Our scope of review in a certificate suspension case is limited to a determination of whether there has been an error of law or whether the findings of the trial court can be supported by substantial evidence. *Department of Transportation, Bureau of Driver Licensing v. Midas Muffler Shop,* 108 Pa.Commonwealth Ct. 199, 529 A.2d 91 (1987).

point required that his station cease performing inspections. Strickland testified that he was not aware that inspections had been performed without the proper inserts until he was contacted by the owner of the vehicle involved. Strickland also indicated that both Chambers and Yenser were employed by him to do inspections and that they were authorized to do so in his absence.

First we address Strickland's contention that the trial court erred in concluding that under the doctrine of strict liability as found at 67 Pa.Code § 175.29(a)(6) he is accountable for the actions of his employees. Section 175.29(a)(6) states that:

(a) Personal liability. It is the responsibility of the owner of an inspection station to do all of the following:

. . . .

(6) To assume full responsibility, with or without actual knowledge, for:

(i) Every inspection conducted by an employe of the inspection station.

(ii) Every inspection conducted on the premises.

(iii) Every certificate of inspection issued to the inspection station.

(iv) Every certificate of inspection issued by the inspection station.

(v) A violation of the Vehicle Code or this chapter related to inspections committed by an employe of the inspection station.

While the above Code section governs safety inspections, a similar strict liability doctrine applies to emissions inspections pursuant to 67 Pa.Code § 177.38(a)(7), which states that:

(a) Personal liability. It is the responsibility of the owner of an emission inspection station:

. . . .

(7) To assume full responsibility, with or without actual knowledge, for:

(i) Every emission inspection conducted at the emission inspection station.

(ii) Every emission inspection waiver issued at the emission inspection station.

(iii) Every certificate of emission inspection issued to the emission inspection station.

(iv) A violation of the Vehicle Code of this chapter related to emission inspections committed by an employe of the emission inspection station.

(v) Maintaining adequate numbers of current certificates of emission inspection and inserts for issuance.

In *Department of Transportation, Bureau of Traffic Safety v. Stahl*, 75 Pa.Commonwealth Ct. 18, 460 A.2d 1223 (1983), this Court held that when construing Section 175.-29(a)(6) of the Code[6] an owner is responsible, with or without his knowledge, for acts conducted by his employees relating to inspections. This responsibility only applies where the employee acted within his scope of employment. In describing the term "scope of employment" we cited our Superior Court in *Shuman's Estate v. Weber*, 276 Pa.Superior Ct. 209, 216, 419 A.2d 169, 173 (1980), which stated:

> To be considered within the scope of employment, conduct must meet the following criteria: (1) it must be of the kind the actor was employed to perform; (2) it must occur substantially within the authorized time and space limits; and (3) it must be actuated, at least in part, by a purpose to serve the master. It is not necessary, however, that the acts be specifically authorized by the master to fall within the scope of employment; it is sufficient if they are clearly incidental to the master's business. [Citations omitted.]

The trial court applied this three-pronged test as used in *Stahl* and found that Yenser and Chambers were hired to perform inspections, that the inspection of the

6. 67 Pa.Code § 175.29.

vehicle receiving the altered inserts occurred at the station during regular business hours, and that the owner received financial remuneration for the performance of the inspection by his employees. Therefore, the trial court held that according to the legal principles in *Stahl* and under Sections 175.29(a)(6) and 177.38(a)(7) of the Code,[7] Strickland was liable for his employees' actions. We conclude there is sufficient evidence in the record to support these findings.

■ The trial court also found that Strickland had no personal knowledge of, nor participated in, the actions of his employees. It is upon this basis that Strickland argues that he was entitled to a consideration by DOT of the newly promulgated regulations [8] in effect that established a point system to be used in conjunction with the mandatory suspensions. Specifically, 67 Pa.Code § 175.51(b) states:

(b) Assignment of Points. The Department will permit the station owner to consent to the acceptance of a point assessment for the station in lieu of suspension, if the station owner, manager, supervisor or other management level employee was without knowledge of the violation, and should not have known of the violation.

(1) The station owner bears the burden of proving that it provided proper supervision of the employee who committed the violation, but that supervision could not have prevented the violation.

(2) By accepting the assessment of points, the station owner waives the right to appeal the Department's determination in the case to a court of record. If the station owner refuses to accept the point assessment, the Department will issue the suspension indicated in this subchapter.

As stated above, the trial court found that Strickland was without knowledge of the violations. However, the record is silent with regard to the station owner's provisions for proper supervision of his employees. Furthermore, the record is silent with regard to DOT's consideration or offer

---

7. 67 Pa.Code § 175.29(a)(6) and § 177.38(a)(7).

8. 67 Pa.Code § 175.51(b) became effective July 1, 1986.

which would permit the station owner to consent to the acceptance of a point assessment in lieu of the suspensions.

Accordingly, we conclude, in view of the trial court's findings, that DOT committed an error of law when it did not consider the alternate penalty of a point assessment. Pursuant to Section 706 of the Judicial Code, 42 Pa.C.S. § 706,[9] we vacate the order of the trial court and remand for a reconsideration of the penalty stage of the proceedings to include the application of Section 175.51(b) of the Code.

## ORDER

AND NOW, this 4th day of April, 1990, the orders of the Court of Common Pleas of Chester County in the above-captioned matters are vacated.  This matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**9.** Section 706 of the Judicial Code provides: "An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances."