**Richard V. CASTAGNA, d/b/a Bristol Penn Jersey Auto**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 25, 2003.

Decided Aug. 22, 2003.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

Dean W. Ibrahim, Doylestown, for appellee.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

The Department of Transportation (DOT) appeals from an order of the Court of Common Pleas of Bucks County (trial court) which sustained the appeal of Richard V. Castagna, d/b/a Bristol Penn Jersey Auto (Castagna) and directed that DOT rescind the fine and suspension of Castagna's inspection station certificate. We affirm in part, reverse in part and remand for the reasons set forth below.

On April 5, 2002, DOT issued an Order of Fine and Suspension notifying Castagna that he performed faulty emissions inspections on fourteen vehicles and that his Certificate of Appointment as an Official Emission Inspection Station was being suspended for three months and a $1000 fine was being imposed for each of the fourteen counts of faulty inspection. However, DOT mitigated Castagna's suspension by ordering that the suspension and fine run concurrently, for a total suspension of three months and a total fine of $1000.[1] Castagna appealed DOT's Order to the trial court, which issued an order dated May 7, 2002 scheduling a de novo hearing and staying the implementation of DOT's Order.

The issue in this case is whether Castagna properly performed vehicle emissions inspections at his service station. The regulations enacted by DOT set forth that there are three types of vehicle emission tests. The first type, which is the more

---

1. We note that when DOT considers multiple violations at the same time, it has the discretion to take the inspector's good faith into account and order that suspensions be served concurrently. *See* 67 Pa.Code § 177.606; *Department of Transportation, Bureau of Driver Licensing v. Sloane Toyota, Inc.*, 125 Pa. Cmwlth. 579, 558 A.2d 585, 588 (1989).

accurate of the three, is an Acceleration Simulation Mode Test (ASM Test). The regulations promulgated by DOT define this test as:

A one mode "loaded" mode emission test (ASM 5015), utilizing a dynamometer, which simulates driving a vehicle at a predetermined speed and driving condition.

67 Pa.Code § 177.3 (Definitions). A dynamometer is "an apparatus for measuring mechanical power (as of an engine)." (Merriam Webster Collegiate Dictionary, 10th ed.2000). The two drive wheels of the car are placed on the dynamometer for testing, which simulates real-world driving conditions while the vehicle is accelerated and decelerated. A device is also attached to the tailpipe, which measures the exhaust being expelled from the vehicle during the test. Service stations either have an above-ground dynamometer or an in-ground dynamometer. Certain vehicles, such as those with a trailer hitch that cannot be removed or cars with "ground effects"[2] cannot be tested on an above-ground dynamometer because it would be impossible to drive the vehicle onto the dynamometer. The second type of test is a Two–Speed Idle Test (TSI Test), which is defined as:

A vehicle emission inspection test in which the exhaust emissions are measured at two ranges of engine revolutions per minute (rpm) as prescribed in 40 C.F.R. Part 51, Subpart S, Appendix B(II) (relating to test procedures two speed idle test).

67 Pa.Code § 177.3 (Definitions). This test is performed while the vehicle is not in gear. Thus, the wheels do not move and a dynamometer is not required. The third type of test is a one-speed idle test. This

test was not used on any of the vehicles in this case.

The model year and make of a vehicle are the factors that determine which test should be used. Specifically, the regulations provide that:

(f) *Exhaust emission test types.* The following test types will be administered to the appropriate model years and fuel types:

(1) Beginning October 1, 1997, vehicles registered in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties will be required to undergo the following:

| Model Year | Test Type |
| --- | --- |
| 1975–1980 vehicles and 1975–1983 light duty trucks. | One-speed idle test; gas cap test; visual inspection. |
| 1981 and newer vehicles and 1984 and newer light duty trucks. | ASM 1 (ASM5015); evaporative system function tests (pressure, purge and gas cap); visual inspection; |
| 1981 and newer full time all wheel drive vehicles | Two speed idle test, visual inspection, pressure and gas cap test. |

67 Pa.Code § 177.51(f)(1).

At the hearing, DOT presented the testimony of Edward E. Senavaitis, who is a Quality Assurance Officer for DOT. Mr. Senavaitis testified that he conducted an audit of Castagna's business on January 19, 2002. His investigation revealed that, in his opinion, Castagna was incorrectly performing vehicle emissions inspections. Mr. Senavaitis testified that if the regulations provide that an ASM Test should be used to test the emissions of a vehicle that test must be used unless that vehicle is full-time all-wheel drive or if it has a traction control system that cannot not be disengaged because these features would make it impossible to use on the dyna-

---

**2.** "Ground effects" are attachments to the undercarriage of the vehicle that are used to enhance its appearance.

mometer. In these situations, a TSI Test can be used. Mr. Senavaitis also testified that his interpretation of the regulations is that if a vehicle without these features simply cannot be driven onto an above-ground dynamometer for an ASM Test the emissions test should not be performed at all. Instead, the owner of the vehicle should be referred to a station that has an in-ground dynamometer that is capable of performing the ASM test on that type of vehicle. Additionally, if a vehicle has all-wheel drive that cannot be disengaged when it supposed to be able to be disengaged, Mr. Senavaitis testified that the vehicle should not be given a TSI Test but should fail the emissions test.

Mr. Senavaitis further testified that his audit revealed that Castagna improperly performed the TSI Test rather than the ASM Test on fourteen vehicles. Mr. Senavaitis did not actually inspect any of these vehicles, but the records revealed that none of these fourteen vehicles had a traction system that could not be disengaged or was full-time all-wheel drive. Rather, some of these vehicles simply could not be driven onto the above-ground dynamometer used by Castagna. Additionally, with regard to one of these vehicles, Castagna entered into the emissions test computer that it was full-time all-wheel drive when in fact it was only a two-wheel drive vehicle. Also, for another vehicle he entered into the computer that it had a traction control system that could not be disengaged when in fact the traction system could be disengaged because it has been previously tested on a dynamometer.

On cross-examination, Mr. Senavaitis was questioned about a document titled Enhanced Emission Inspector Recertification (Emission document). At page five of his brief, Castagna explains that the Emis-sion document is published by Aspire, Inc., which is the only entity hired by the Commonwealth to do testing and recertification of emissions inspectors.[3] The Emission document provides, in relevant part, that:

### Vehicles Equipped with ABS and/or Traction Control

Most vehicles equipped with anti-lock braking systems (ABS) can be safely tested on a dynamometer. Dynamometer testing can also be safely performed on vehicles equipped with a traction control system if the system is disengaged. If the traction control system cannot be disabled, a two-speed idle test should be performed. *If any vehicle indicates unsafe operating behavior during a dynamometer test, abort the test and perform a two speed idle test.*

Vehicle emblems that indicate such accessories such as ABS or traction control do not determine what type of test is to be performed on the vehicle. Illumination of the ABS indicator lamp during as ASM test may be considered normal; however, illumination of the traction control lamp may indicate that the traction control has not been properly disengaged or turned off. *If a safety concern arises during the dynamometer test, the test may be aborted and a two speed idle test performed on the vehicle.*

(R.R. at 99a–101a) (emphasis in original). Mr. Senavaitis testified that, in his opinion, the sentence about safety issues only applies to vehicles with anti-lock brakes and traction controls systems. So, if a safety issue arises in either of these contexts, a TSI Test can be performed. If a safety issue arises with a vehicle without either of

---

**3.** Appendix B to Chapter 177 of 67 Pa.Code confirms that Aspire, Inc. does conduct the emissions certification testing for the Commonwealth.

these systems, a TSI Test cannot be performed.

Richard J. Castagna (R.J. Castagna), who is Castagna's son, testified that between November 1, 2001 and December 31, 2001 he performed approximately 300 vehicle emissions tests and that he was cited by DOT for fourteen of those inspections. Castagna entered into evidence a packet of test results from those fourteen vehicles. This evidence, along with R.J. Castagna's testimony, revealed that R.J. Castagna did not perform the ASM Test on these vehicles for the following reasons: 1) the first vehicle had large, knobby tires that would have been unsafe to drive on the dynamometer, 2) the second vehicle was a van that was hard to drive on the dynamometer and the testing machine kept restarting, 3) the third vehicle had a welded trailer hitch, 4) the fourth vehicle also had a welded trailer hitch, 5) the fifth vehicle had a mechanical problem that made it impossible to get it out of all-wheel drive, 6) the sixth vehicle would not hold the correct speed on the dynamometer, 7) the seventh vehicle had studded snow tires that would have been unsafe to drive on the dynamometer, 8) the eighth vehicle had "ground effects" that made it impossible to drive on the dynamometer, 9) the ninth vehicle kept having a "floating point error" during the test which caused the emissions test machine to lock up, 10) the tenth vehicle also had a "floating point error", 11) the eleventh vehicle could not be driven onto the dynamometer, 12) the twelfth vehicle had a welded trailer hitch, 13) the thirteenth vehicle would not have been safe to drive on the dynamometer because it had a utility body and was loaded with tools and 14) for the fourteenth vehicle, it was hard to see the test monitor while driving the vehicle on the dynamometer.

Castagna explained that he thought that if he could not get a vehicle onto the dynamometer or if he could not get the vehicle out of all-wheel drive that he could perform a TSI Test. In addition, it was his understanding that if a vehicle had snow tires or wobbly tires, which in his opinion was not safe to use on his dynamometer, he could use a TSI Test. However, now that he has been cited by DOT he turns these vehicle away without performing the test. With regard to improperly entering the information into the computer, Castagna testified that these vehicles could not be tested on his dynamometer and that he just incorrectly entered the information as to why the vehicles could not be tested.

■ Following the hearing, the trial court sustained Castagna's appeal and rescinded the fine and suspension of Castagna's inspection privileges. The appeal to this Court by DOT followed.[4] On October 25, 2002, the trial court issued a decision in support of its order pursuant to Pa. R.A.P. 1925. The trial court explained that it accepted the testimony of Castagna as credible. With regard to the testimony of Mr. Senavaitis, the trial court stated that he never saw the vehicles in question and didn't know about welded hitches or vehicles equipped with ground effects, nor did he test vehicles with snow tires or wobbly tires. Also, the trial court noted that during the hearing it was acknowledged that a

4. Our scope of review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence. *Fiore Auto Service v. Dept. of Transportation, Bureau of Motor Vehicles,* 735 A.2d 734 (Pa.Cmwlth. 1998), *petitions for allowance of appeal denied,* 559 Pa. 681, 682, 739 A.2d 545 (1999). Questions of witness credibility are solely within the province of the trial court. *Department of Transportation, Bureau of Traffic Safety v. Karzenoski,* 96 Pa.Cmwlth. 608, 508 A.2d 618, 620 (1986).

TSI Test was an acceptable test. Accordingly, it sustained Castagna's appeal.

On appeal, DOT argues that it sustained its burden of proving that Castagna failed to perform emissions inspections in accordance with the statutes and regulations governing the performance of emissions inspections. Further, DOT argues that the TSI Test safety exception only applies to vehicles with anti-lock brake systems or traction control.

■ In support of its assertion that the TSI Test safety exception only applies to vehicles with all-wheel drive or traction control systems, DOT relies on Mr. Senavaitis' interpretation of the Emission document. As a practical matter, inspectors rely on this document for guidance rather than the statutes or regulations when performing emissions tests. The Emission document clearly sets forth that "If *any vehicle* indicates unsafe operating behavior during a dynamometer test, abort the test and perform a two speed idle test." (emphasis added). Despite its location in the ABS/Traction Control section, this safety exception does broadly refer to *any* vehicle rather than just a vehicle equipped with these systems. A reasonable mechanic could interpret the Emission document broadly and conclude that is permissible to use the TSI Test any time there is a safety concern just as DOT and Mr. Senavaitis interpreted the regulations and the Emission document narrowly to limit the safety exception to only certain types of vehicles. Because it is unclear that R.J. Castagna improperly applied the TSI Test safety exception, we conclude that DOT improperly cited Castagna for performing the TSI Test rather than the ASM Test on the three vehicles where R.J. Castagna credibly testified that there was a safety concern during the ASM Test. Therefore, this aspect of the trial court's decision is affirmed.

■ With regard to the remaining eleven vehicles, however, the regulations do clearly set forth that certain vehicles are supposed to be given the ASM Test rather than the TSI Test. Unlike the vehicles discussed above where there was a safety concern, the Emission document contains no language which might have led R.J. Castagna to reasonably believe that he could perform a TSI Test on vehicles that, for example, simply could not be driven onto his above-ground dynamometer or that he just had trouble operating on his dynamometer. Instead, these vehicles should have been sent to a facility that has an in-ground dynamometer that could properly perform the ASM Test, which is the procedure that Castagna is currently following. Therefore, the trial court erred by sustaining Castagna's appeal with regard to the emissions inspections of these vehicles and this aspect of the trial court's decision is accordingly reversed.

■ Finally, Castagna asserts that even if faulty inspections were performed at his station, DOT never offered him the option of an assignment of points as a lesser penalty. Castagna argues that both he and R.J. Castagna were without knowledge that the regulations were being violated. In support of his argument, Castagna cites *Strickland v. Dept. of Transportation,* 132 Pa.Cmwlth. 605, 574 A.2d 110 (1990). In *Strickland,* we remanded the case to DOT because it failed to consider the alternate penalty of point assessment. With regard to the point system, DOT's regulations provide, in relevant part, that:

(b) Assignment of points. If the station owner, manager, supervisor or other management level employe was without knowledge of the violation, the Department may permit the station owner to consent to the acceptance of a point

assessment for the station in lieu of suspension.

(1) The station owner bears the burden of proving that the station owner provided proper supervision of the employe who committed the violation, but that the owner's supervision could not have prevented the violation.

(2) By accepting the assessment of points the station owner waives the right to appeal the Department's determination in the case to a court of record. If the station owner refuses to accept the point assessment, the Department will issue the suspension provided in this chapter for the offense committed.

67 Pa.Code § 177.602(b).

First, unlike in *Strickland,* a document in the record reveals that DOT did in fact consider assessing Castagna points in lieu of a suspension. However, the document states that this option was rejected because: "The station manager/owner committed the violations(s)." (R.R. at 149a). Second, it is clear that the point system is only an option when an employee performs a faulty inspection without the knowledge of the station manager despite the station manager's proper supervision. This provision acts to mitigate the punishment when, despite the station manager's best efforts, a violation still occurs. Here, even though R.J. Castagna mistakenly believed that he was allowed to perform TSI Tests on the eleven vehicles discussed above, he was in charge of the station and was also the one who performed the faulty inspections.[5] Therefore, mitigation of the penalty based on a violation occurring despite proper supervision would not be an issue. Thus, Castagna would not be eligible to receive an assessment of points in lieu of suspension under 67 Pa.Code § 177.602(b).

Accordingly, the order of the trial court is affirmed in part and reversed in part and this case is remanded to the trial court, for further remand to DOT, to allow DOT to change it records to reflect that Castagna only performed eleven faulty inspections and to allow DOT to impose an appropriate penalty.

### *ORDER*

AND NOW, August 22, 2003, the order of the Court of Common Pleas of Bucks County docketed at No. 02–2796–17–6 and dated July 26, 2002 is hereby AFFIRMED in part and REVERSED in part and this case is REMANDED to the trial court, for further remand to the Department of Transportation, for the reasons set forth in the foregoing opinion.

Jurisdiction Relinquished.

---

**5.** Although Castagna is the holder of the inspection certificate, it is clear from R.J. Cas-

tagna's testimony that he was in charge of the business.