# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Apache's Auto Clinic,                                 :
                                                      :
                                    Appellant         :
                                                      :
                        v.                            : No. 1172 C.D. 2016
                                                      : Submitted: April 21, 2017
Commonwealth of Pennsylvania,                         :
Department of Transportation,                         :
Bureau of Motor Vehicles                              :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: July 24, 2017


        Apache's Auto Clinic (Appellant) appeals from the June 28, 2016 order[1] of the Court of Common Pleas of Philadelphia County (trial court) that denied in part Appellant's statutory appeal, reinstating two one-year suspensions of Appellant's Certificate of Appointment (Certificate) as an official emission inspection station imposed by the Department of Transportation, Bureau of Motor Vehicles (Department), pursuant to Section 4724(a) of the Vehicle Code (Code),

---

[1] The order was dated June 27, 2016, but was entered June 28, 2016.

75 Pa. C.S. § 4724(a).[2] The trial court modified the suspensions to run concurrently.

Appellant is an auto repair shop located in Philadelphia that is certified to perform required state emissions inspections. By official notice dated June 4, 2015, the Department notified Appellant that it was suspending Appellant's Certificate for one year effective immediately and imposing a $2,500.00 fine for furnishing emission certificates of inspection without conducting emission inspections (furnishing)[3] and imposing a separate one-year suspension of its Certificate and an additional $2,500.00 fine for fraudulent recordkeeping.[4] The suspensions were to run consecutively.

On June 9, 2015, Appellant timely filed a statutory appeal to the trial court, which held a hearing on June 8, 2016. In support of the suspension and fines, the Department presented the testimony of Georgeann Jordan, a supervisor at Parsons, a subcontractor with the Department which oversees the Department's safety and emissions program in southeastern Pennsylvania. Reginald Corbin,

---

[2] Section 4724(a) of the Code provides that "[t]he department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department." 75 Pa. C.S. § 4724(a).

[3] The penalty for a first offense of furnishing by an emission inspection station is a one-year suspension and $2,500.00 fine. 67 Pa. Code §177.602(a)(1)(ii).

[4] The penalty for a first offense of fraudulent recordkeeping by an emission inspection station is a one-year suspension and $2,500.00 fine. 67 Pa. Code §177.602(a)(1)(iii). Fraudulent recordkeeping is defined, in pertinent part, as "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals . . . [t]hat a certificate of inspection was issued without compliance with the required inspection procedure." 67 Pa. Code §177.601(i).

2

Appellant's owner, and Charles Davis, a former emissions inspection mechanic for Appellant, testified on behalf of Appellant.

Jordan testified that she performed a clean-screening investigation of Appellant's records in the vehicle identification database (VID) covering a period of approximately six months in 2014 and discovered some anomalies. She testified that she tasked quality assurance officer Barnell Neville to go to Appellant's station, inform the owner of the violations, retrieve records, and interview the owner and inspectors. Jordan stated that based on her investigation and the information she received from Officer Neville, she concluded that a donor vehicle was being used to perform the anomalous inspections. Notes of Testimony (N.T.), 06/08/2016, at 7-14.

Jordan then testified about the process of her investigation and explained how she identified the anomalies in Appellant's records in the VID. She first noted that each of the vehicles with model years 2005 or newer should have had an on-board vehicle identification number (OBD VIN) that was automatically populated in the VID if the inspector had linked the vehicle in question to the station's analyzer via a data transfer cable. That column of information in Exhibit C-2[5] was blank. Additionally, Jordan stated that vehicles newer than 2005, almost without fail, have an Evaporative Emissions System (EVAP). She testified that the zero present for each vehicle in the Exhibit C-2 column marked EVAP indicated that the system does not exist in the vehicle linked to the analyzer for the inspection. N.T. at 15-24; Reproduced Record (R.R.) at 109a-10a.

---

[5] The Department's Exhibit C-2 is a list of 37 vehicles with model years 2005 or newer that Jordan compiled from Appellant's records in the VID over the course of her investigation, which was entered into evidence without objection. R.R. at 109a-10a.

Jordan also explained that the designation PCMID in the spreadsheet refers to the car's computer. She testified that there are about 40 different PCMIDs and their designations vary – sometimes they are identified by letter, sometimes by number. Exhibit C-2 listed the PCMID designation for all the vehicles in question as "D." N.T. at 25; R.R. at 109a-10a.

Jordan testified that the number in the PIT column of the spreadsheet is a count of the number of outlets on a vehicle that can be read by the computer. She explained that newer and more sophisticated vehicles generally have higher PIT counts, though not always. Exhibit C-2 showed that all of the vehicles in question had a PIT count of 16. Finally, Jordan testified that an exhaust gas recirculation (EGR) system would be present in some vehicles and not in others; however, Exhibit C-2 showed that no EGR existed in any of the inspected vehicles in question. Thus, she testified, each vehicle effectively had the same "fingerprint." N.T. at 25-27; R.R. at 109a-10a.

Jordan testified that she saw the same fingerprint in vehicles listed in Exhibit C-3,[6] though a vehicle manufactured in 2004 or before would not necessarily have an OBD VIN. Jordan's investigation of Appellant's records showed that a total of 204 emissions inspections were completed during the approximately six months of data she reviewed and approximately 130 vehicles showed the same fingerprint. Jordan testified that she determined the inspections

---

[6] The Department's Exhibit C-3 is a list of 93 vehicles with model years 2004 or older that Jordan compiled from Appellant's records in the VID over the course of her investigation, which was entered into evidence without objection. R.R. at 111a-16a.

4

of the vehicles listed in Exhibit C-4,[7] performed during the same period, to be legitimate. N.T. at 37-40; R.R. at 109a-19a.

Jordan testified that she then searched through VID records from different emissions inspection stations to determine what vehicles would likely generate the same fingerprint. She testified that she concluded that a 1996 or 1997 Honda Civic or CRV was being used as a donor vehicle. Jordan stated that following a hearing at which Corbin and Davis were present, her impression was that a 1997 Honda had, in fact, been used as a donor car. N.T. at 27-37.

Following Jordan's testimony, Appellant's counsel moved for a nonsuit alleging that the Department failed to meet its burden. The trial court denied Appellant's motion. N.T. at 57-59.

Corbin testified that he neither had knowledge of fraudulent inspections being performed at his shop nor did he give permission for any fraudulent inspection to be performed. He stated that upon learning of possible fraudulent inspections, he fired all of the inspectors under his employment. He testified that he followed state law when it came to performing state inspections, though he was not always on-site to supervise his employee inspectors. Corbin averred that after Officer Neville left the shop, he conducted a shop meeting where Davis admitted to using a donor car to complete inspections. Corbin stated that Davis was promptly fired after his admission. N.T. at 61-69.

Davis then testified that he did use a donor car to perform emissions inspections. He stated that he did so without Corbin's knowledge or consent and

---

[7] The Department's Exhibit C-4 is a list of 74 vehicles from both categories included in Exhibits C-2 and C-3 – model years 2004 and older and model years 2005 and newer – that Jordan compiled from Appellant's records in the VID over the course of her investigation, which was entered into evidence without objection. R.R. at 117a-19a.

5

only used a donor car when Corbin was off-site. Davis testified that he told Corbin about using the donor car for the first time at the shop meeting that followed Officer Neville's investigation. He admitted that he used a friend's 1997 Honda Civic to complete his emissions inspections when he was the only one in the shop. Davis further admitted that when he performed the inspections with the donor car, he used both his own inspector credentials and the credentials of other inspectors in the shop, including Corbin's. N.T. at 73-78.

In its June 28, 2016 order, the trial court denied in part Appellant's statutory appeal. The trial court modified the suspensions imposed by the Department to run concurrently rather than consecutively. In its subsequent opinion, the trial court specifically credited Davis's testimony that he used a donor car to falsify inspections records. The trial court also credited Corbin's testimony that he did not know about the fraudulent inspections and took remedial measures immediately after learning of Davis's wrongdoing. Nevertheless, the trial court determined that Davis had committed the violations of furnishing and fraudulent recordkeeping and that Appellant was liable for his actions.[8]

Appellant's appeal to this Court followed.[9] Appellant first argues that the trial court erred in denying its motion for nonsuit and finding that the

---

[8] The owner of an emissions inspection station is responsible for acts conducted by his employees, with or without his knowledge, relating to the inspections conducted within the scope of an employee's employment. *Strickland v. Department of Transportation*, 574 A.2d 110, 113 (Pa. Cmwlth. 1990). Conduct considered within the "scope of employment must: (1) be of the kind the actor was employed to perform; (2) occur substantially within the authorized time and space limits; and (3) be actuated, at least in part, by a purpose to serve the master, though the master need not specifically authorize the acts. *Id.*

[9] Our scope of review in inspection certificate suspension cases is limited to determining whether the trial court committed an error of law or whether its findings of fact are supported by
**(Footnote continued on next page…)**

6

Department satisfied its *prima facie* burden of proof that Appellant engaged in furnishing and fraudulent recordkeeping under the Code.  We disagree.

The Department has the burden of proving, by a preponderance of the evidence, any alleged violations of the Code and the regulations interpreting the same.  *Firestone Tire and Service Center, O.I.S. No. 798 v. Department of Transportation*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).  "Because firsthand testimony concerning the vehicle condition at the time of official inspection is not likely to be available except when the police employ preplanned test inspections, there must be reliance upon credible opinion testimony to meet the needs of the situation."  *Milanovich v. Commonwealth*, 445 A.2d 1337, 1338 (Pa. Cmwlth. 1982).  The Department does not need to present "concrete" evidence of a violation; the Department need only show that it is more likely than not that the alleged violation occurred.  *Tropek v. Department of Transportation, Bureau of Motor Vehicles*, 847 A.2d 208, 212 (Pa. Cmwlth. 2004).

The trial court is the ultimate finder of fact, and determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the purview of its authority.  *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765, 766 (Pa. Cmwlth. 2008).  Jordan's testimony outlined anomalies in Appellant's VID information that indicated that Appellant was using a donor car, which she was able to correctly identify as a 1997 Honda Civic.  Jordan testified that the report of the investigator she sent to examine Appellant presented no rebuttal of her conclusions.  After careful review

---

**(continued…)**

substantial evidence.  *Snyder v. Department of Transportation, Bureau of Motor Vehicles,* 970 A.2d 523, 526-27 (Pa. Cmwlth. 2009).

of the record, we conclude that Jordan's testimony, together with the consistent documentation reporting the anomalies, is sufficiently substantial so as to support the findings of the trial court. More importantly, Davis's admission that he did, in fact, use a donor car provides direct evidence of the alleged violations that corroborates Jordan's expert opinion testimony. In sum, there is sufficient competent evidence to support the Department's determination that Appellant committed the alleged violations of furnishing and fraudulent recordkeeping.

Appellant next argues that the trial court erred in failing to find Appellant culpable of the lesser included offenses of improper inspection[10] and improper recordkeeping.[11] We disagree.

The Department's regulations contain no definition of "improper" or "fraudulent." However, this Court previously concluded that improper acts do not include the elements of fraud or deceit, whereas such elements are essential to a charge of fraudulent conduct. *Firestone*, 871 A.2d at 867; *Fiore Auto Service v. Department of Transportation, Bureau of Motor Vehicles*, 735 A.2d 734, 737 (Pa. Cmwlth. 1998); *Department of Transportation, Bureau of Driver Licensing v. Midas Muffler Shop*, 529 A.2d 91, 93 (Pa. Cmwlth. 1987). Declarations, artifices, or practices designed to mislead anyone examining the record into believing that a proper inspection was done and that the record is facially correct are inherently deceitful. *Midas Muffler*, 529 A.2d at 93. Determining whether particular factual

---

[10] Improper inspection is defined as a "failure to perform an emission inspection as required by [the Code] or any other deviation in the testing procedure provided that it can be demonstrated that the outcome of the inspection would have been the same if the inspection had been performed." 67 Pa. Code §177.601.

[11] Improper recordkeeping is defined as "[a] recordkeeping entry that is not in accordance with fact, truth or required procedure." 67 Pa. Code §177.601.

circumstances constitute fraud is "largely an issue of fact" to be determined by the trial court. *Department of Transportation v. Sortino*, 462 A.2d 925, 927 (Pa. Cmwlth. 1983).

It is clear from the record that Davis's actions of using a donor car to complete inspections were intended to mislead any person, whether the Department or Appellant, into thinking that he completed proper inspections of the vehicles in question when he did not. Appellant is strictly liable for Davis's actions, which were made within the scope of his employment. *Strickland*. Again, we conclude that the trial court properly found that Appellant committed the violations of furnishing and fraudulent recordkeeping.

Finally, Appellant asserts that the trial court erred in failing to consider the imposition of points in lieu of suspension. The Department's regulation at 67 Pa. Code §177.602(b) provides that if the station owner had no knowledge of the violation, the Department may permit the station owner to consent to the acceptance of a point assessment in lieu of suspension. In this case, the trial court credited Davis's and Corbin's testimony that Corbin had no knowledge that Davis was using a donor car for the inspections in question, that Davis performed these inspections when Corbin was not on-site, and that Corbin in no way authorized the use of a donor car for the inspections. Accordingly, the Department's regulation at 67 Pa. Code §177.602(b) is applicable in this case.

We have previously interpreted that regulation as requiring the Department to at least *consider* the use of the points system and provide evidence of its consideration in all inspection cases. *McCarthy v. Department of Transportation*, 7 A.3d 346, 353 (Pa. Cmwlth. 2010). The Department stipulates that the record is silent as to its consideration of points in this matter and requests

9

that this Court vacate and remand to the trial court to consider whether the Department considered imposing points.

For the above reasons, we affirm the trial court's order in part and vacate and remand to the trial court for further proceedings in accordance with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Apache's Auto Clinic,                    :
                                          :
                    Appellant             :
                                          :
          v.                              :  No. 1172 C.D. 2016
                                          :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Motor Vehicles                 :

## O R D E R

AND NOW, this 24<u>th</u> day of <u>July</u>, 2017, that portion of the order of the Court of Common Pleas of Philadelphia County (trial court), entered June 28, 2016, reinstating the suspension is VACATED and this matter is remanded to the trial court for proceedings consistent with this opinion; the trial court's order is AFFIRMED in all other respects.

Jurisdiction relinquished.


_____
MICHAEL H. WOJCIK, Judge