IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Javier Perez-Diaz,                      :
                Appellant        :      No. 474 C.D. 2021
                                :
        v.                              :      Submitted: February 4, 2022
                                :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Motor Vehicles                :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge


OPINION BY JUDGE McCULLOUGH          FILED: July 11, 2023

          Javier Perez-Diaz (Perez-Diaz) appeals from the March 25, 2021 order of the Court of Common Pleas of Berks County (trial court) that denied and dismissed his appeal from a cumulative six-month suspension of Perez Car Renew & Towing's (the Station) certificate of appointment as an official safety inspection station. The Commonwealth of Pennsylvania, Department of Transportation (Department), Bureau of Motor Vehicles (Bureau), imposed the suspension pursuant to Section 4724 of the Vehicle Code (Code), 75 Pa. C.S. § 4724, based on an inspection performed on November 1, 2018, by Perez-Diaz's employee, Paul Velez (Velez). Upon review, we affirm.

## I.    BACKGROUND AND PROCEDURAL HISTORY

          Perez-Diaz owns and operates the Station in Temple, Pennsylvania. Pursuant to certifications issued by the Bureau, the Station has performed vehicle inspections as an official safety inspection station. On August 28, 2019, the Bureau

issued an order which suspended the Station's certificate of appointment as an official safety inspection station. (Reproduced Record (R.R.) at 14a-15a.) In this order, the Bureau advised Perez-Diaz that the suspension was being imposed because on November 1, 2018, the Station had passed a vehicle with the following items failing inspection: "emergency brake cable mounts broken, hole in frame unibody, exhaust leaking, struts leaking oil, fail bounce test, [and] no battery tie down, indicating vehicle passed in MV[-]431." (R.R. at 14a.) The Bureau cited violations of 67 Pa. Code § 175.51(a) for faulty inspection of equipment or parts, improper recordkeeping, and improperly assigning certificate of inspection, and imposed three consecutive two-month suspensions. The cumulative six-month suspension took effect on October 9, 2019. *Id.*

On September 17, 2019, Perez-Diaz timely filed an appeal of the six-month suspension of the Station's certificate of appointment with the trial court. On December 8, 2020, the trial court held a hearing *de novo*. At the hearing, the Bureau presented the testimony of Brian Sweikert, a Quality Assurance Officer. Sweikert testified that he received a complaint about issues with a 2004 Hyundai Elantra (Vehicle) with a brand-new inspection sticker. (R.R. at 43a.) The purchaser took the Vehicle to a garage, which found that there were "holes in the frame," and "other major issues and other concerns," and that it should not have passed inspection. *Id.* Sweikert spoke to the purchaser of the Vehicle, who agreed to take it to another business for Sweikert to inspect it. Sweikert's inspection took place on December 18, 2018, and the original inspection was completed on November 1, 2018. (R.R. at 48a.) Sweikert testified that "[t]he results of my inspection showed that the battery tie down was missing, the struts were leaking and/or severely damaged. Holes in the frame. The e-brake cables detached from the vehicle, and exhaust leak." (R.R. at 49a.) Sweikert

2

determined that the safety inspection sticker on the Vehicle had been issued by the Station. (R.R. at 50a-52a.) Sweikert stated that with the specific deficiencies he found during his inspection of the vehicle, the Vehicle should have failed inspection. (R.R. at 54a-62a.) Sweikert stated the difference in the mileage listed on the inspection sticker and the mileage on the day he performed the reinspection was within 93 to 97 miles. (R.R. at 64a.) Sweikert testified that it was not possible for the rust hole in the Vehicle's unibody to have become as large as it was "in 90-some miles or 43 days." (R.R. at 65a.) Sweikert further testified that each one of the deficiencies he found would have required failure of the safety inspection. *Id.* Photos and documents from Sweikert's investigation of the Vehicle's deficiencies were admitted into evidence without objection. (R.R. at 81a, 114a-143a.)

Sweikert visited Perez-Diaz's Station on February 21, 2019, and viewed the MV-341 vehicle inspection log, which showed none of the deficiencies found in the reinspection for the Vehicle. (R.R. at 68a-89a.) Sweikert questioned Perez-Diaz about the inspection, and he indicated that Velez, his employee at the time, performed the inspection; however, Velez was no longer working at the Station as he had resigned the week prior. (R.R. at 76a.) As to the Bureau's decision to suspend Perez-Diaz's certification, Sweikert testified that after a Bureau meeting it was determined that Perez-Diaz would not be offered points in lieu of suspension. (R.R. at 83a.)

On March 25, 2021, the trial court denied and dismissed Perez-Diaz's appeal and directed the suspension to be reinstated. (R.R. at 192a.) The trial court noted in its order that

> it is not within the [trial court's] authority to levy what it may consider a more appropriate penalty absent a different finding than what the [Department] reached. The [trial court] is not privy to [the Department's] reasoning for choosing to run three two-month suspensions consecutively rather than concurrently or offering the alternative point penalty as

3

permitted under 67 Pa. Code § 175.51. After hearing, however, the [trial court] finds the incident occurred (which resulted in three separate citations), and that the law now dictates this outcome.

*Id.* On April 26, 2021, Perez-Diaz timely appealed to this Court. The trial court complied with Pennsylvania Rule of Appellate Procedure 1925. In its opinion, the trial court indicated that it determined the Department met its burden to demonstrate that there were violations for faulty inspection of equipment or parts, improper record keeping, and improper assignment of certificate of inspection. The trial court noted that, although it found Perez-Diaz's testimony credible that he was unaware of Velez's actions,

> 67 Pa. Code §175.29(a)(6) creates strict liability for a station owner to be fully responsible for the actions of his employees "without or without actual knowledge" in regards to:
> (i) Every inspection conducted by an employe of the inspection station.
> (ii) Every inspection conducted on the premises.
> (iii) Every certificate of inspection issued to the inspection station.
> (iv) Every certificate of inspection issued by the inspection station.
> (v) A violation of the Vehicle Code[1] or this chapter related to inspections committed by an employe of the inspection station.

(Trial Court Opinion at 6; R.R. at 206a.)

---

[1] 75 Pa. C.S. §§ 101-9701.

4

## II.    ISSUES

On appeal,[2] Perez-Diaz presents three issues for our review.  First, Perez-Diaz argues the trial court erred in determining that the Station's certificate of appointment should be suspended because Velez's inspection of the Vehicle was performed without his knowledge or consent.  Second, Perez-Diaz contends the trial court erred in determining the regulation found at 67 Pa. Code § 175.29(a)(6), which was promulgated in accordance with 75 Pa. C.S. § 4724(a), are constitutional.  Third, Perez-Diaz asserts the trial court erred in determining he was not entitled to a point assessment rather than the imposed suspension.

## III.    DISCUSSION

### A. Strict Liability

Perez-Diaz contends that his employee, Velez, was acting outside the scope of his employment when he committed the three inspection violations because Velez was not hired "to perform insufficient or improper inspections."  (Appellant's Br. at 12).

We begin with a review of the relevant law.  Pursuant to the Vehicle Code, the Department is required to license and regulate vehicle inspection stations.  In pertinent part, section 4724(a) states:

> The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment.

---

[2] Our scope of review in an inspection certificate suspension case "is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *Fiore Auto Service v. Department of Transportation, Bureau of Motor Vehicles*, 735 A.2d 734 (Pa. Cmwlth. 1998), *appeal denied*, 739 A.2d 545 (Pa. 1999).  Questions of witness credibility are solely within the province of the trial court.  *Department of Transportation, Bureau of Traffic Safety v. Karzenowski*, 508 A.2d 618, 620 (Pa. Cmwlth. 1986).

5

75 Pa. C.S. § 4724(a). This provision of the Code "has been construed to impose strict liability on a station owner for all acts of its employees conduct[ed] within the scope of their employment." *McCarthy v. Department of Transportation*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010) (citing *Department of Transportation, Bureau of Traffic Safety v. Stahl*, 460 A.2d 1223 (Pa. Cmwlth. 1983)); 67 Pa. Code § 175.29 (relating to obligations and responsibilities of stations).

Section 175.51(a) of the Vehicle Code states that "[t]he **complete operation of an official inspection station is the responsibility of the owner**." 67 Pa. Code § 175.51(a) (emphasis added). To that end, the station owner's obligations and responsibilities as an official inspection station are set forth in 67 Pa. Code § 175.29. The station owner's liability is set forth in Section 175.29(a), which states, in pertinent part:

> (a) **Personal liability**. It is the responsibility of an inspection station to do all of the following:
> . . . .
> (6) **To assume full responsibility, <u>with or without actual knowledge</u>, for**:
> > (i) **Every inspection conducted by an employe of the inspection station.**
> > (ii) **Every inspection conducted on the premises.**
> > (iii) **Every certificate of inspection issued to the inspection station.**
> > (iv) **Every certificate of inspection issued by the inspection station.**
> > (v) A violation of the Vehicle Code or this chapter related to inspections committed by an employe of the inspection station.

67 Pa. Code § 175.29(a)(6) (emphasis added).

For an act to fall within the "scope of employment," the employee's conduct must: (1) be of the kind he was employed to perform; (2) occur within the

authorized time and space limits; and (3) and be done at least in part to serve the employer. *Stahl*, 460 A.2d at 1225; *see also Strickland v. Department of Transportation*, 574 A.2d 110 (Pa. Cmwlth. 1990) (holding employer liable for his employees' actions in performing faulty vehicle inspections because the employees were hired to perform vehicle inspections, the inspections occurred during regular business hours, and the employer received financial remuneration for the employees performing the inspections). The station owner can defend an enforcement action by showing that the employee acted outside the scope of his employment. *McCarthy*, 7 A.3d at 351.

Applying this three-pronged test to this case, Velez was acting within the scope of his employment. First, Velez conducted the inspection of the Vehicle at the Station. Second, the inspection occurred within the Station during normal work hours while Velez was present and scheduled to be working at the Station. Last, the MV-431 sheet shows that the owner of the Vehicle paid the Station $259.30 for performing the inspection and making repairs to the vehicle. By obtaining payment from the vehicle owner for the inspection and repairs, Velez's conduct was done at least in part to serve Perez-Diaz and the Station. *Strickland*, 574 A.2d at 113; *Shuman's Estate v. Weber*, 419 A.2d 169, 173 (Pa. Super. 1980).

Because Velez's conduct was done within the scope of his employment, the general law of agency has application here and Perez-Diaz does have strict liability for the conduct of his employees relative to the inspection of motor vehicles. *Department of Transportation, Bureau of Traffic Safety v. Searer*, 413 A.2d 1157, 1159 (Pa. Cmwlth. 1980). Therefore, as the trial court stated, we conclude that "the Department was entitled to hold [Perez-Diaz] responsible for Mr. Velez's violations." (Trial Court Opinion at 7).

**B. Constitutionality of Department's Regulations**

Next, we address Perez-Diaz's argument that the regulation at 67 Pa. Code § 175.29(a)(6), which was promulgated in accordance with 75 Pa. C.S. § 4724(a), is unconstitutional as the implications of such regulation allow broad discretion to the Department. (Appellant's Br. at 13). Perez-Diaz argues that under section 4724(a), the adoption of section 175.29(a)(6) provides the Department with "broad discretion in the implementation of punishment" of the regulations. (Appellant's Br. at 14). Perez-Diaz argues that the regulation interferes with his right to run a business and earn income, which he asserts are fundamental rights, and, therefore, we must utilize the strict scrutiny test. (Appellant's Br. at 13).

In its Pa.R.A.P. 1925(a) opinion, the trial court did not address this argument as Perez-Diaz waived the issue by not raising it before the trial court. The trial court further stated that even if Perez-Diaz properly preserved the issue, he did not identify "the bases for his challenge or state how or why the statute is constitutionally infirm," and for that reason, the trial court did not address the issue. (Trial Court Opinion at 7-8.) However, we conclude that Perez-Diaz did properly raise the issue in his brief before the trial court. (R.R. at 149a.)

From what this Court can surmise from Perez-Diaz's brief, he argues that the Department's broad discretion in the implementation of punishment has interfered with his ability to run a business and earn an income. (Appellant's Br. at 14.) Perez-Diaz cites to no authority to support the proposition that he has a fundamental right to operate the Station or how 75 Pa. C.S. § 4724(a) is unconstitutional, and instead, he merely cites to authority regarding the strict scrutiny test. (Appellant's Br. at 13-14). Previously, our Supreme Court has held that no one has a "fundamental right" to operate an official safety inspection station. *Commonwealth v. W.J. Harris and Son*, 170 A.2d 591, 592 (Pa. 1961). As an inspection station owner's certificate of appointment to conduct vehicle inspections is a **privilege** and **not a fundamental**

8

**right**, legislation affecting it must be evaluated under a rational basis analysis. *Cf. Department of Transportation, Bureau of Driver Licensing v. Middaugh*, 244 A.3d 426, 434 (Pa. 2021). Once a violation of the inspection provisions of the Code has taken place, the Department has not only the power set by 75 Pa. C.S. § 4724, but the duty to suspend the certificate of appointment. *Searer*, 413 A.2d at 1159. Thus, we utilize the rational basis test, not strict scrutiny as Perez-Diaz argues, in reviewing his constitutional claim.

In *Probst v. Department of Transportation, Bureau of Driver Licensing*, the Supreme Court set forth the following two-step analysis:

> First, we determine whether the challenged statute seeks to promote any legitimate interest or public value. If so, we then determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated stated interest or interests. In undertaking this analysis, we are free to hypothesize reasons the legislature might have had for the classification, and will not declare a genuine classification void even if we might question the soundness or wisdom of the distinction. Furthermore, we keep in mind that because a presumption of constitutionality attaches to any lawfully enacted legislation, the burden is upon the party attacking a statute to rebut the presumption of constitutionality by a clear, palpable, and plain demonstration that the rational basis test is not met.

849 A.2d 1135, 1133 (Pa. 2004) (internal citations omitted). Applying the first step, the Bureau is protecting the public from unsafe vehicle inspections by imposing a suspension of an inspection station's certificate of appointment when that station has committed a violation of inspection regulations. *W.J. Harris*, 170 A.2d at 592; *Searer*, 413 A.2d at 1159. As to the second step, imposing a suspension is "reasonably related to accomplishing the articulated state interest" of protecting the public from unsafe vehicle inspections because it encourages the station owner to perform all future inspections in strict conformity with vehicle inspection regulations for the safety of the

vehicle owner and public. *Probst*, 849 A.2d at 1144. There is no doubt that encouraging a station owner to provide safe inspections to the station's customers is a "legitimate interest or public-value." *Id.* Therefore, we conclude that 67 Pa. Code § 175.29(a)(6) passes the two-step rational basis test.

Lastly, regarding the constitutionality of 67 Pa. Code § 175.29(a)(6) as promulgated by 75 Pa. C.S. § 4724(a), we note that there is "a presumption of constitutionality attaching to any lawfully enacted legislation" and "[s]hould the constitutionality of such legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable, and plain demonstration that the statute violated a constitutional provision." *McKeown v. Department of Transportation, Bureau of Driver Licensing*, 869 A.2d 556, 560 (Pa. Cmwlth. 2004) (citing *James v. Southeastern Pennsylvania Transportation Authority*, 477 A.2d 1302, 1304 (Pa. 1984)). For state police power to be exercised reasonably, it must be in "the interests of the public generally," "the means are reasonably necessary for the accomplishment of the purpose, and must "not be unduly oppressive upon individuals." *George Washington Motor Lodge Co. v. Department of Transportation*, 545 A.2d 493, 495 (Pa. Cmwlth. 1988). The requirements contained in § 175.29(a)(6) support the "interests of the [motoring] public generally," are "reasonably necessary for the accomplishment of the purpose" of protecting the public from unsafe vehicle inspections, and are not "unduly oppressive upon individuals." *Id.* This is because the requirements of section 175.29(a)(6) are directed towards one person, generally the inspection station owner who is also the holder of the certificate of appointment, because he/she are in the best position to oversee vehicles inspections and ensure that they are performed in accordance with the Department's regulations. Section 175.29(a)(6) necessitates the attentiveness of the station owner in overseeing vehicles' inspections performed by the station employees to effectuate the safety of not only the vehicle owner but for anyone in the vicinity of the vehicle during its operation.

10

We conclude that Perez-Diaz failed to show that both 67 Pa. Code § 175.29(a)(6) is an unreasonable exercise of state police power, *George Washington Motor Lodge Co.*, 545 A.2d at 496, and that its promulgating statute 75 Pa. C.S. § 4724(a) is a "clear, palpable, and plain" violation of the constitution, *McKeown*, 869 A.2d at 560.

## C. Points v. Penalty

Finally, Perez-Diaz argues that when the Department explained why the point assessment was not offered, it set forth a "list of ambiguous charges," which are not applicable to the case. (Appellant's Br. at 16). Perez-Diaz contends that the testimony at the trial court's hearing directly contradicted the Department's reasons for choosing suspension over points.

In relevant part, 67 Pa. Code § 175.51(b)(1) provides:

> (b) Assignment of points. The Department will permit the station owner to consent to the acceptance of a point assessment for the station in lieu of suspension, if the station owner, manager, supervisor or other management level employe was without knowledge of the violation, and should not have known of the violation.
>
> > **(1) The station owner bears the burden of proving that the station owner provided proper supervision of the employe who committed the violation, but that the owner's supervision could not have prevented the violation**.

67 Pa. Code § 175.51(b)(1) (emphasis added). Thus, the regulation authorizes the assessment of points in lieu of suspension, and it imposes a burden upon a station owner to establish eligibility.

In cases where the owner of a licensed inspection station has no knowledge of an employee's violation of state regulations, the Department must

11

consider offering points in lieu of suspension of the owner's certificate and provide evidence of such consideration. *McCarthy*, 7 A.3d at 353; 67 Pa. Code § 175.51(b)(1) (stating that if a station owner had no knowledge of an employee's violation, the Department may permit the acceptance of a point assessment in lieu of suspension). The evidence must explain why the Department chose or declined to offer points in lieu of suspension. *Id.* However, "the point system is only an option when an employee performs a faulty inspection without the knowledge of the station manager **despite the station manager's proper supervision**." *Castagna v. Department of Transportation, Bureau of Motor Vehicles*, 831 A.2d 156, 162 (Pa. Cmwlth. 2003) (emphasis added). The station owner bears the burden of proving that he properly supervised the employee who committed the violation but that such supervision could not have prevented the violation. *McCarthy*, 7 A.3d at 352; 67 Pa. Code § 175.51(b)(1). In *Kerbeck v. Department of Transportation, Bureau of Traffic Safety*, 459 A.2d 908, 909 (Pa. Cmwlth. 1983), we found that the station owner's testimony, rather than proving supervision of the employee, had instead established the lack of supervision of the employee who committed the offense. There, the station owner testified that he "hired what [he] believe[d] to be competent people, and that was [his] way to supervise [the Station] by hiring competent people to do the job." *Id.*

Here, Perez-Diaz failed to explain what procedures, if any, he had in place to supervise Velez's performance of the vehicle inspections. Like the station owner in *Kerbeck*, Perez-Diaz's testimony established that he did not provide Velez with any supervision, namely because "the reason [he] hired [Velez] was because he was a state inspector." (R.R. at 100a.) Perez-Diaz testified that he considered himself responsible only for the inspections he performed, and not those performed by Velez. (R.R. at 109a-110a.) He further testified that he did not spot check or supervise Velez

12

performing inspections. (R.R. at 100a, 103a-104a.) Because Perez-Diaz offered no evidence regarding his procedure for overseeing or reviewing Velez's work, he failed to satisfy his burden of proof regarding proper supervision.

Moreover, the Bureau's evidence at the hearing demonstrated that it considered, but rejected, point assessment in this case. In a form titled, "Consideration of Point Assessment in Lieu of Suspension," a Department representative authorized and signed on August 1, 2019, the Department's reason for refusing to offer Perez-Diaz a point assessment, which it described as the "Owner/Manager unable to establish if supervision was provided at the time of the violation(s)." (R.R. at 4a.) This is the only reason on the form that the Department representative authorized for suspending the Station's license in lieu of points.[3] Because the record demonstrates that the Department considered the point assessment option, and explained its reason for declining it, the Department has satisfied its burden. *See McCarthy*, 7 A.3d at 353 ("[I]n *all* inspection certificate suspension cases, the Department must at least *consider* the use of the points system and provide evidence of this consideration.") (emphasis in original). *But see Strickland*, 574 A.2d at 114 (vacating and remanding to the trial court for reconsideration of penalty where the record was silent as to whether the Department considered or offered the point-assessment option).

Accordingly, we conclude that Perez-Diaz's testimony established that he did not provide Velez with supervision at the Station, and, therefore, did not satisfy his burden of proof. Furthermore, we conclude that the record reflects that the Department considered the assessment of points in lieu of suspension.

---

[3] In his brief, Perez-Diaz argues the Department set forth numerous reasons why point assessment was not offered in the list of "ambiguous charges" on its "Consideration of Point Assessment in Lieu of Suspension." (Appellant's Br. at 16-17.) We note that the only reason selected by the Department representative to authorize suspension over points was "Owner/Manager unable to establish if supervision was provided at the time of the violation(s)." (R.R. at 4a.)

13

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's order.

_____

PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Javier Perez-Diaz,            :
            Appellant        :    No. 474 C.D. 2021
                             :
    v.                       :
                             :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Motor Vehicles     :

## *ORDER*


AND NOW, this 11th day of July, 2023, the March 25, 2021 order of the Court of Common Pleas of Berks County is AFFIRMED.


_____
PATRICIA A. McCULLOUGH, Judge