# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kedecia Manna, d/b/a 9th and Lloyd Inspections, OIS #EG30 | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 516 C.D. 2022 |
| | : | |
| Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, Appellant | : : : : | |
| | | |
| Kedecia Manna, d/b/a 9th and Lloyd Inspections, OIS #EG30 | : : | |
| | : | |
| v. | : | No. 517 C.D. 2022 |
| | : | Submitted: July 5, 2024 |
| Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, Appellant | : : : : | |

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
             **HONORABLE ELLEN CEISLER,** Judge
             **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: September 20, 2024**

In these consolidated appeals,[1] the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (Department or PennDOT) appeals from the Orders of the Court of Common Pleas of Delaware County (trial court), docketed April 29, 2022, that sustained the appeals of Kedecia Manna (Manna), d/b/a 9th and Lloyd Inspections OIS# EG30 (Station), from the

---

[1] This Court sua sponte consolidated these appeals by order dated July 17, 2023.

Department's suspensions of Station's Certificate of Appointment as an Official Safety Inspection Station (Safety Certificate) and Certificate of Appointment as an Official Emission Inspection Station (Emissions Certificate) (together, Certificates) and rescinded the suspensions. On appeal, the Department argues the trial court erred and/or abused its discretion in finding that the Department did not meet its burden of proving that Manna violated and/or failed to comply with various Department regulations and that such violations supported the suspensions of the Certificates. Discerning no error or abuse of discretion in the trial court's determinations, we affirm.

## I.    BACKGROUND

Manna, proceeding pro se before this Court, operates the Station at 1033 West 9th Street in Chester, Pennsylvania. Manna rents the building housing the Station, and a competing inspection station is located in the same building.[2] Relevantly, the Department issued Notices or Orders of Suspensions (Notices or Orders) to Manna, as summarized below, following audits of the Station conducted by employees of Parsons Corporation (Parsons). The Department contracts with Parsons to perform investigative and administrative audits of inspection stations to ensure their compliance with the Vehicle Code (Code), 75 Pa.C.S. §§ 101-9701, and the Department's regulations.

The Department issued two Notices on October 22, 2021. The first Notice suspended the Station's Safety Certificate for a period of two months, or until records are produced, for failing to provide records upon demand during an October

---

[2] For more background regarding the two competing inspection stations and their not-so-cordial relationship, see *Manna d/b/a 9th and Lloyd Inspections OIS# EG30 v. Department of Transportation, Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 516-517, 785-786, 993-994, 1057-1058, 1059-1062 C.D. 2022, 230 C.D. 2023, filed September 27, 2023), slip op. at 2-3.

20, 2021 investigative audit, and for one year for failing to report a discontinuance of the business.[3]  The second Notice, resulting from the same audit, suspended the Station's Emissions Certificate for three months, or until records are produced, for failing to produce records on demand and for one year for failing to report the discontinuance of the business.[4]  The suspensions were to run consecutively and were to begin November 22, 2021, but actions taken by the Department prior to that date, such as cancelling an inspection sticker order in October, reflect that they had immediate consequences.  Both Notices incorporated the contents of the October 20, 2021 Audit Reports.[5]

## II.    TRIAL COURT PROCEEDINGS AND DECISION

Manna appealed from both suspension Notices,[6] and the trial court granted Manna's requests for supersedeas pending appeal.  Thereafter, the trial court held a de novo hearing on Manna's appeals.

At the hearing, Quality Assurance Officer and Parsons' employee Gregory Neely (QAO Neely) testified that he received an October 20, 2021 telephone call from Quality Assurance Manager and Parsons' employee Thomas Bishop (QAM Bishop).  QAM Bishop instructed QAO Neely to perform an audit on the Station because there was information that the Station had been evicted and was no longer in business.  Upon arriving at the Station, QAO Neely observed eviction notices on

---

[3] The First Notice is found at pages 134a to 136a in the Reproduced Record.

[4] The Second Notice is found at pages 155a to 157a in the Reproduced Record.

[5] The Investigative Audit Reports are found at pages 137a to 138a (First Notice) and pages (Second Notice) 158a to 159a in the Reproduced Record.

[6] The appeal related to the Emissions Certificate suspension was given trial court docket number cv-2021-009198, and docket number 516 C.D. 2022 in this Court.  The appeal related to the Safety Certificate suspension was given the trial court docket number cv-2021-009200 and docket number 517 C.D. 2022 in this Court.

3

the doors. He did not speak to Manna or try to reach out despite having Manna's email address and cellphone number. (Reproduced Record (R.R.) at 74a, 108a.) Instead, QAO Neely only spoke to an employee of the adjacent, competing inspection station, who stated that the state police had "raided" the Station and that the county sheriff's office served an eviction notice the day after the raid. (*Id.* at 233a, 248a.) Based on his visit, QAO Neely authored two inspection reports resulting in the Notices, indicating that Manna had not reported to the Department that the business had been discontinued. QAO Neely concluded that the emissions machine or analyzer should be locked because of the Station's failure to produce records and to report changes to the Department. According to QAO Neely, inspection stations must be open Monday through Friday, for a minimum of 40 hours per week, any time between 7:00 a.m. and 8:00 p.m.

Manna explained that on October 15, 2021, Manna's landlord illegally evicted Manna from the building and had changed the locks. After speaking with a county courthouse employee, Manna believed that the eviction was illegal; however, upon returning to the building, a police officer advised that Manna would be arrested and charged with burglary if Manna changed the locks and entered the building. It was not until October 20, 2021, that a common pleas court judge granted a supersedeas in the eviction proceedings, and, at that time, Manna was confident that entry to the building could be had without the possibility of facing criminal charges. On October 20, 2021, Manna was attending to other suspension-related matters and the Station's employee was unavailable to work at the Station. Manna further testified that at no time was the business discontinued, the Station's business accounts had not been closed, and the Station's contract with the Department had not been canceled. Manna stated that the Department could see that the Station had performed

4

inspections after the audit using the emissions machine until that machine, which is connected to the Department's computers, was locked.

Manna testified that there was no notice of QAO Neely's audit. On October 27, 2021, Manna contacted the Department to ask about an October 25, 2021 sticker order that had not been fulfilled, and Manna was told the Station's status was listed as abandoned. Manna was unaware of the Department's regulations regarding the number of hours and the days of the week that an inspection station must be open. In closing remarks, Manna observed that the Certificates were **not** suspended for violating the Department's regulations relating to the days of the week and hours that a station must be open; rather, the suspensions were based on an alleged discontinuance of the Station's business and failure to produce documents, notwithstanding that QAO Neely did not contact Manna to request documents.

Following the hearing, the trial court sustained Manna's appeals and rescinded the suspensions. The trial court thereafter, on May 5, 2022, issued two sets of nearly identical findings of fact and conclusions of law (May 5, 2022 Findings). (R.R. at 231a-61a.) Therein, the trial court found Manna's testimony credible. (*Id.* at 243a, 258a.) Upon review of the evidence, the trial court found that the Department had not met its burden of proving, by a preponderance of the evidence, that Manna committed the violations set forth in the Notices. The trial court explained that finding that Manna violated the regulations by not being present at the Station during the eviction period "would assist [the Department] to sanction [Manna] for [the] failure to perform an illegal act," i.e., violating the court order relating to the eviction and subjecting Manna to an arrest for burglary. (*Id.* at 243a, 258a (citing *McMullen v. Hoffman*, 174 U.S. 639, 654 (1898); *Holt v. Greene*, 73 Pa. 198, 201 (1873); *Hazle Drug Co. v. Wilner*, 131 A. 286. 288 (Pa. 1925)).) It further held that the credited

5

evidence did not support a finding that Manna had discontinued the Station's business, as Manna had not closed the Station's bank account, canceled its contract with the Department, or stopped performing inspections until the emissions machine was locked in November 2022, the last of which the Department would be aware per QAO Neely's testimony. (*Id.* at 244a-45a, 258a-59a.) The trial court found QAO Neely's investigation lacking, as it relied primarily on the statements of a competing business's employee and QAO Neely did not reach out to Manna to obtain an explanation for what was happening. As for Manna's failure to produce records, the trial court found "that Manna was not asked to produce any emissions records during the investigative emissions audit on October 20, 2021." (*Id.* at 246a, 261a.) More generally, the trial court found fault with the Notices themselves, concluding they did not clearly set forth, in either the Notices or documents referenced therein, which regulations Manna violated, gave conflicting information as to what the alleged violations were, and did not provide Manna an opportunity to be heard before the suspensions began. (*Id.* at 245a-46a, 259a-61a.)

The Department appealed, and the trial court directed it to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), Pa.R.A.P. 1925(b), for both appeals (Statements). (*Id.* at 219a-20a.) The Department did so, raising six allegations of errors by the trial court. The trial court issued an opinion in accordance with Rule 1925(a) (1925(a) Opinion), in which it explained why the Department's alleged errors lacked merit. (*Id.* at 179a-208a.) In the 1925(a) Opinion,[7] the trial court repeated its reasoning from its May 5, 2022 Findings, as well as pointed out that the

---

[7] The 1925(a) Opinion is found at pages 179a to 208a in the Reproduced Record.

6

Department did not follow its regulation at 67 Pa. Code § 177.651,[8] in that it did not give Manna an opportunity to be heard prior to the immediate suspension of the Certificates. (*Id.*)

## III. THE DEPARTMENT'S APPEAL

### A. Legal Standards

The Court's "review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010). "Substantial evidence is [defined as] relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 528 (Pa. Cmwlth. 2009) (citation omitted). If the record evidence "is adequate to support the finding found by the trial court, as fact finder, [] [the Court is] precluded from overturning th[e] finding and must affirm." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). The Court must review the record "evidence in a light most favorable to . . . the prevailing party in the trial court." *Sillah v. Dep't of Transp.* (Pa. Cmwlth., No. 1311 C.D. 2016, filed Jan. 16, 2018), slip op. at 10 n.15[9] (citing *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998)).

---

[8] This regulation states: "Prior to the immediate suspension of any official emission inspection station, certificate of appointment, emission inspector certification or certified repair technician, the Department shall, within 3 days, provide written notice of the alleged violation and the opportunity to be heard." 67 Pa. Code § 177.651.

[9] This unreported panel decision is cited for its persuasive, rather than binding, value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

7

"Witness credibility [] [lies] solely within the province of the trial court." *Id.* Evidentiary weight determinations are likewise "solely within the province of the trial court." *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003). "In cases involving alleged violations of the Code and the regulations interpreting the same, [the Department] has the burden of proving such violations by a preponderance of the evidence." *Firestone Tire & Serv. Ctr., O.I.S. #798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).

## B. The Parties' Arguments

In its appeal, the Department reasserts four of the six arguments raised in its Statements as bases for reversal. It argues that the trial court erred or abused its discretion in finding that the Department failed to prove, generally, that Manna violated the Code and the Department's regulations thereby authorizing the suspensions under Section 4724(a) of the Code.[10] More specifically, the Department argues the trial court should have found that Manna violated the regulations at "67 Pa. Code § 177.602(a)(xxiv) (failure to report discontinuance of business)," "67 Pa.

---

[10] Section 4724(a) provides:

> The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. A schedule of all penalties, points and suspension may be established by the [D]epartment by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the [D]epartment. The [D]epartment shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the [D]epartment.

75 Pa.C.S. § 4724(a).

Code § 175.27 [(failure to be open for the] required hours for operation of an inspection station[),]" "67 Pa. Code § 177.407 [(failure to be open for the] required hours for operation of an emission inspection station[),]" and "67 Pa. Code § 177.602(a)(vi) [(]failure to produce records upon demand . . . [),]" based on QAO Neely's testimony. (The Department's Brief (Br.) at 4-5.) The Department argues it established Manna's violation by a preponderance of the evidence, including by Manna's testimony that the Station was not open on October 20, 2021, because the Station's other employee was working elsewhere, and Manna was busy doing other Department business.

In response, Manna relies on the trial court's rationale from its May 5, 2022 Findings and 1925(a) Opinion, particularly those regarding the deficiencies of the Notices, to argue the Department's contentions are without merit and the trial court did not err or abuse its discretion in sustaining the appeals and rescinding the suspensions. (Manna's Br. at 12-14, 16-26.) Manna asserts that, as testified, Manna was not informed until sometime on October 20, 2021, that the supersedeas in the eviction case was reinstated, allowing a return to the Station without risk of arrest and, by that time, the Station's employee was at their second job and Manna was taking care of matters associated with other Department litigation. (R.R. at 115a; Manna's Br. at 12.) Manna reiterates that in order to have complied with the Department's regulations, the citation of which was not contained in the Notices or other materials referenced therein, Manna would have had to violate the eviction court's order. (Manna's Br. at 19.)

*C. Discussion*

We begin with the Department's argument that it established that Manna violated its regulations because, on October 20, 2021, Manna did not produce

9

documents upon demand, Manna failed to notify the Department of the discontinuance of the Station's business, and the Station was not open during the hours mandated by the regulations. The trial court held, as Manna argues, that the Department could not prevail on these claims because the Notices were insufficient, as a matter of due process, of placing Manna on notice of the alleged violations.

The trial court explained:

Adequate notice for procedural due process requires at a minimum that the notice contain a sufficient listing and explanation of charges against an individual. *Dunn v. Dep*['t] *of Transp*[.], *Bureau of Driver Licensing*, 819 A.2d 189[, 193] (Pa. Cmwlth. 2003) [() citing *Gombach v. Dep't of State, Bureau of Comm'ns, Elections, & Leg.*, 692 A.2d 1127[, 1130] (Pa. Cmwlth. 1997)()]. Procedural due process requires that an individual be given adequate notice of the charges against the individual and an opportunity to be heard. *Telang v. Bureau of Prof*[.] [*&*] *Occ*[.] *Affairs*, . . . 751 A.2d 1147[, 1151-52] ([Pa.] 2000). Therefore, at the very least, the notice must have a "sufficient **listing and explanation** of the charges against the individual.["] *Dunn*[, 819 A.2d at 193]. Pursuant to the holding in *Walker v. Dep*[artment] *of Transp*[oration, Bureau of Motor Vehicles* (Pa. Cmwlth., No. 771 C.D. 2018, filed April 30, 2019),] . . . sufficient notice requires including the date, time, and location of the conduct, **the specific section and subsection of the regulation violated**, and a summary of facts sufficient to inform the licensee of the nature of the conduct forming the basis for the violation.

Although the October 22, 2021 Notice . . . states that the attached report dated October 20, 2021[,] more fully explains the conduct that is the basis of the violations, the October 20, 2021 Emissions Audit Report does not identify the Pennsylvania Code Sections that Manna allegedly violated. The October 22, 2021 Notice . . . only charges Manna with violation of 67 Pa. Code §[] 602(a)[, but this] does not identify the specific . . . [regulation] that Manna allegedly violated, but rather, details the penalty for the alleged violation. Further, [] Manna was not provided notice that the Investigative Emissions Audit was performed or [with] the Emissions Audit Report. [Manna] did not learn of the audit until October 27, 2021[,] when [Manna] learned that the Station was listed as "ABANDONED" and inquired further.

10

PennDOT's Orders [] lack specificity as to the violations. The Orders merely cite the code section which contain the penalties and then refer[] to the attached report which contain the penalties as the basis of the violations. However, neither the Order[s] [n]or the attached report[s] specifically cite the Code section that is allegedly violated. . . . .

Due to the lack of specificity in the Orders, the [t]rial [c]ourt [was] speculating as to the specific Code section Manna has allegedly violated. . . . The Suspension Orders[] are the official listing of the charges for which [Manna's] Certificate[s are] being suspended.

This error is demonstrated in PennDOT's Statement[s] . . . , specifically [where PennDOT] has cited the alleged violation as 67 Pa. Code [§] 177.602(a)(xxiv). Neither the Order . . . nor the attached [A]udit [R]eport cite that Code section[, which relates to "]failure to notify the Department of changes of ownership, location or other changes affecting an official inspection [station].["]

The Order [] does not refer to the above referenced violation, but instead lists failure to report the discontinuance of business. Since the Order lacks specificity, the [t]rial [c]ourt is forced to speculate as to which code section has been violated.

Reviewing the Audit [R]eport[, which is cited as giving the reason for the suspensions], . . . all the blocks are checked as N/A. This specifically includes the requirements for MV-427 and [d]ocument review. . . . .

In conflict of the prior page of the Audit Report, under Violations found, the boxes for failure to Notify PennDOT on MV[-]427 change, Failure to report discontinuance of Business . . . and Records not present are checked. PennDOT has provided no evidence as to how QAO Neely could first state[] that certain items were not applicable and then find that items that were not applicable were in violation. . . .

As to the allegation of failure to notify PennDOT of the discontinuance of a business, PennDOT fails to cite which regulation mandates such notice or the procedure or the time frame of such notification. Without specificity, the [t]rial [c]ourt is left to speculate as to the validity of this alleged violation. Due to the fact that the first time that PennDOT has specifically cited 67 Pa. Code [§] 177.602(a)(xxiv) is in [its] Statement . . . , said alleged violation was not properly noticed in the Order [].

. . . . The mere citing of penalties and not the specific statutes or regulations had the trial court speculating as to the nature of the violations. The [t]rial [c]ourt is unable to find that there is a violation when it is not clear which code section or statute has been violated. The [t]rial [c]ourt cannot be permitted to reach a decision on the basis of speculation or conjecture.

(1925(a) Op. at 16-20.)

Upon review, we agree with the trial court's analysis and discern no error in its determination that the Notices were insufficient. The Department does not, in its appellate brief, challenge the trial court's reasoning. Instead, it simply reiterates the alleged violations and cites QAO Neely's testimony as to his investigation. Curiously, in its appellate brief, the Department continues to cite the **penalty** provision, 67 Pa. Code § 177.602, not any substantive regulation, as the basis for the failure to give notice of discontinuance and failure to produce records upon demand violations. (The Department's Br. at 4-5.) And the Department continues to use the incorrect subsection of this regulation in support of the former violation, citing 67 Pa. Code § 177.602(a)(xxiv), (*id.*); but this subsection relates to the penalty for "[f]ailure to notify the Department of changes of ownership. Location or other changes affecting an official inspection station." 67 Pa. Code § 177.602(a)(xxiv). The penalty relating to lack of notice for discontinuation is in subsection (a)(xxiii), and no substantive provision is cited in support of the violation.

In addition, the trial court found that the Department did not meet its burden of proving these violations by a preponderance of the evidence, reasoning that the Department's "decision to suspend Manna's [C]ertificate[s] is against the weight of the evidence and contrary to law." (1925(a) Op. at 15.) The trial court explained:

PennDOT did no investigation as to the allegation of a discontinuance of business. [It] did not try and contact Manna even though QAO Neely had Manna's contact information. QAO Neely d[id] not state in his report that the Station had been cleared of all property. QAO Neely's

12

only investigation was to speak with an employee from the adjacent inspection station.

QAO Neely clearly knew from the eviction notice that Manna was not permitted to be in the building, but still cited Manna for not producing records and for failure to report discontinuance of a business. PennDOT clearly knew that Manna would have violated the law if [Manna] had entered the Station[,] but PennDOT still cited [Manna] . . . .

(1925(a) Op. at 14.) The trial court continued:

The Order . . . states Manna's violation as a "failure to produce records upon demand by Department quality assurance officer or other authorized Commonwealth representative or agent." Manna did not willfully deny PennDOT requested records. QAO Neel[]y testified that while he had both Manna's phone number and email address, he did not make contact with [Manna] on October 20, 2021, the date that he alleged that Manna failed to produce records upon request. . . . . Manna was not asked to produce any emissions records during the investigative emissions audit on October 20, 2021. No one from PennDOT attempted to inform Manna that audit was being conducted []or contacted [Manna] to demand that [Manna] produce business records. The only investigation into this matter on October 20, 2021[,] was to question a competing station [employee] for evidence. There is no evidence in the Record as to how QA[M] Bishop initially learned about the Station's eviction.

. . . .

It is abundantly clear that Manna did not discontinue [the] business. Manna performed emissions inspections and utilized the emissions analyzer up to the time [Manna] was prematurely evicted. . . . Manna continued to perform inspections from October 20th up until the analyzer was locked. . . . Manna did not close any of the Station's bank accounts nor did [Manna] cancel [the Station's] contract with PennDOT.

. . . . Upon learning of the unlawful eviction, Manna was informed that [Manna] would be placed in jail for burglary if [Manna] opened [the] business. . . . Because Manna did not want to be arrested, [Manna] did not enter [the] business. Manna testified [to doing] everything that [Manna] could to keep [the] business open. . . . PennDOT failed to

13

prove by a preponderance of the evidence that Manna committed the violations as set forth in the October 22, 2021 Notice [].

(1925(a) Op. at 19-22.)

Again, we agree with the trial court's analysis and discern no error or abuse of discretion in its conclusion that the Department did not meet its burden of proof. Although the Department argues QAO Neely's testimony supports the suspensions of the Certificates, it is apparent from the trial court's May 5, 2022 Findings and 1925(a) Opinion that the trial court not only credited Manna's testimony but also weighed the evidence in Manna's favor. The trial court was not persuaded by the Department's evidence in support of the alleged violations (even if they were adequately cited). Such evidentiary weight and credibility determinations are for the trial court. *Castagna*, 831 A.2d at 160 n.4; *McDonald*, 708 A.2d at 156.

Finally, in response to the Department's assertion that Manna violated the regulations at 67 Pa. Code §§ 175.27 and 177.407, related to the hours an emissions and safety inspection station are to be open, an assertion repeated in the Department's appellate brief, the trial court held:

> Manna was never charged with violation of [these regulations] as noted in PennDOT's Order [] of October 20, 2021. . . . [D]ue process entitles an individual to adequate notice of the charges against him and an opportunity to be heard. *Fraternal [O]rder of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3[d] 531[, 545-46 (Pa. Cmwlth. 2021)]. The [t]rial [c]ourt acknowledges that PennDOT did question Manna as to the hours of operation and the narrative of the [A]udit [R]eport states "closed and locked during normal business hours." However, **Manna was not cited for said violation**. A mere statement in audit narrative does not satisfy the due process notice requirement.

(1925(a) Op. at 22-23 (emphasis added).) The trial court reiterated its analysis, citing *Dunn* and *Walker*, set forth above, to conclude that the Department's issue

14

was without merit as "[i]t is abundantly clear that the listing of the charges only lists 67 Pa. Code[ §]§ 177.602(a) and [] 175.51(a)." (1925(a) Op. at 22.)

As with the trial court's other due process analysis, we discern no error or abuse of discretion in the trial court's reasoning and agree with its determination. The Department does not challenge the trial court's rationale on appeal, but merely argues, based on QAO Neely's testimony and Manna's statement that the Station was not open on October 20, 2021, that it established the violation. However, the trial court found the Department's arguments unpersuasive, observing that the Department's "case rests upon the fact that Manna was unlawfully evicted on October 15, 2021[,] and therefore [was] unable to enter [the] inspection station during the required business [hours] without violating a [c]ourt order." (1925(a) Op. at 24.) And while Manna testified that neither Manna nor the Station's employee were present at the Station on October 20, 2021, it was not until sometime on that day that Manna was notified that the supersedeas was reinstated by the eviction court allowing Manna to legally be at the Station. We, like the trial court, find no merit in the Department's arguments.

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's order sustaining Manna's appeals and rescinding the Department's suspensions of the Certificates.

_____
**RENÉE COHN JUBELIRER,** President Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kedecia Manna, d/b/a 9th and Lloyd : CASES CONSOLIDATED
Inspections, OIS #EG30 :
 :
 :
 v. : No.  516 C.D. 2022
 :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Motor Vehicles, :
 Appellant :


Kedecia Manna, d/b/a 9th and Lloyd :
Inspections, OIS #EG30 :
 :
 v. : No. 517 C.D. 2022
 :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Motor Vehicles, :
 Appellant :

# O R D E R

 **NOW**, September 20, 2024, the Orders of the Court of Common Pleas of Delaware County, entered in the above-captioned matters, are hereby **AFFIRMED**.


          _____
          **RENÉE COHN JUBELIRER,** President Judge